IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CARL JOHNSON and
JUSTIN JOHNSON                                                                                          PLAINTIFFS

V.                                            CASE NO. 4:15-CV-04033

CITY OF NASHVILLE, A
MUNICIPAL CORPORATION, *et al*.                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by Defendants City of Nashville, Arkansas; Billy Ray Jones; Mike Reese; Freddy Brown; Matt Smith; Jackie Harwell; Nick Davis; Monica Clark; Vivian Wright; Jimmie Lou Kirkpatrick; Kay Gathright; James Parker; Carol Mitchell; Andy Anderson; Mike Milum; and Jerry Harwell. ECF No. 15. Plaintiffs have filed a response. ECF No. 18. The Court finds this matter ripe for consideration.

### I. BACKGROUND

On March 24, 2016, Defendants filed the present Motion for Summary Judgment. ECF No. 15. The Complaint names the following defendants: (1) The City of Nashville, a municipal corporation; (2) Jerry Harwell, Fire Marshal; (3) Mike Reese, former mayor of the City of Nashville, (4) Billy Ray Jones, Mayor of the City of Nashville; (5) Freddy Brown, Matt Smith, Jackie Harwell, Nick Davis, Monica Clark, Vivian Wright, Jimmie Lou Kirkpatrick, Kay Gathright, James Parker, Carol Mitchell, Andy Anderson, and Mike Milum "in their official capacity" as city council members for the City of Nashville; and (6) Tomco, Inc.[1]

---

[1] Plaintiffs' claims against Tomco, Inc. were dismissed by this Court on May 14, 2015. ECF No. 11.

Plaintiffs are co-owners of a business formerly located at 216 N. Main Street in Nashville, Arkansas. ECF No. 1, p. 3. Plaintiff Carl Johnson has operated a business at that location since 2008. ECF No. 1, p. 3. On the afternoon of August 26, 2010, a fire started in a neighboring store and spread to the building owned by Plaintiffs. ECF No. 1, p. 3. Numerous fire departments responded and eventually extinguished the fire. ECF No. 1, p. 3. Plaintiffs allege that once Carl Johnson was given notice of the fire, he called the Nashville Fire Department and was told his building would not be demolished. ECF No. 1, p. 4. After the fire was extinguished, Defendant Jerry Harwell, in his role as Fire Chief and Fire Marshal for the City of Nashville, ordered that Plaintiffs' building be demolished. ECF No. 1, p. 4. Plaintiffs' building was subsequently demolished and the inventory located inside was destroyed or damaged. ECF No. 1, p. 4. Plaintiffs were in San Antonio, Texas, at the time of the fire and demolition and were neither given notice of the decision nor provided an opportunity to respond. ECF No. 1, p. 4.

Plaintiffs allege and have provided supporting evidence that multiple individuals questioned and protested the necessity of demolishing 216 N. Main Street and that at least one person was prepared to board up the doors and windows of the premises after the fire was extinguished. ECF No. 1, p. 4, ECF Nos. 18-1 & 18-2. Plaintiffs have also provided supporting affidavits for their argument that it was not necessary to demolish 216 N. Main Street as a means of protecting public safety, health, or welfare. ECF Nos. 18-1 & 18-2. Plaintiffs allege that the demolition of 216 N. Main Street constitutes a violation of "Plaintiffs' due process and equal protection rights, in accordance with the Fifth and Fourteenth Amendments to the United States Constitution, and to Plaintiffs' right against 'unreasonable searches and seizure [sic]' under the Fourth Amendment." ECF No. 1, p. 5.

Plaintiffs seek relief pursuant to 42 U.S.C. § 1983. Plaintiffs pray for "[(1)] a Declaratory Judgment that the demolition of Plaintiffs' building and destruction of the building's contents without prior notice and an opportunity to be heard is a violation of due process and equal protection and was deliberately indifferent in violation to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments and constitutes a 'seizure' with [sic] the meaning of the Fourth Amendment; [(2)] for an Injunction Prohibiting future perpetuation of the Policies and Customs complained of; . . . [(3)] judgment against Defendants . . . in the amount of $224,985.00 as the replacement costs of the building and $927,320.00 as the fair market value of Plaintiffs' inventory; [and (4) an award of] attorney's fees and costs and for such other relief as the Court deems proper." ECF No. 1, pp. 6-7.

In their Answer, Defendants state that Defendant Jerry Harwell was one of the individuals who made the decision to demolish the building, but claim that he acted pursuant to the International Fire Code ("Fire Code") as adopted by the State of Arkansas in 2007, not pursuant to a standing policy or custom of the City of Nashville. ECF No. 8, p. 3. Defendants further state that none of Plaintiffs' friends or family would have been permitted to enter the building after the fire was extinguished. ECF No. 8, p. 3.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

The Court will first address the capacity in which Plaintiffs have sued Defendants. Next, the Court will examine the issue of municipal liability in regard to Defendant City of Nashville. Finally, the Court will consider Defendants' argument that summary judgment is warranted on the ground of adequate state remedies for Plaintiffs' injuries.

### A. Capacity in Which Defendants Have Been Sued

As an initial matter, it is unclear from the face of the Complaint (ECF No. 1) whether Plaintiffs are suing certain Defendants in both their individual and official capacities or in only their official capacities.

It is well established in the Eighth Circuit that "[i]f a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official-capacity claims." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (quoting *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)). Further, "[i]f the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." *Id.* (quoting *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998)); *see Andrus ex rel Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("specific pleading of individual capacity is required"); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("only an express statement that [public officials] are being sued in their official capacity will suffice"); *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) ("a clear statement that officials are being sued in their personal capacities" is required).

Here, the Complaint (ECF No. 1) names, among others[2]: "Jerry Harwel [sic], Fire Marshal;" "Mike Reese, Former Mayor of the City of Nashville;" and "Billy Ray Jones, Mayor of the City of Nashville[.]" The Complaint does not clearly state the capacity in which these Defendants are being sued. Following the binding precedent of *Baker* and numerous Eighth Circuit decisions, the Court must "interpret the complaint as including only official-capacity claims." This reading is supported by the fact that Plaintiffs included Defendants' official titles

---

[2] The Complaint (ECF No. 1) also names the individual members of the "City Counsel [sic]" of the City of Nashville, but explicitly states that they are being sued in their official capacities.

5

when they named each particular Defendant. Accordingly, the Court reads the Complaint (ECF No. 1) as making claims against each Defendant only in his official capacity.

Because "an official-capacity suit is tantamount to an action directly against the public entity of which the official is an agent," the real "party in interest" is the City of Nashville, Arkansas.[3] *See Morton v. City of Little Rock*, 728 F. Supp. 543, 545 (E.D. Ark. 1989), *aff'd*, 934 F.2d 180 (8th Cir. 1991); *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (stating that official capacity suits are to be treated as suits against the entity of which the official is an agent and "*not* a suit against the official personally, for the real party in interest is the entity" (emphasis in original)).

### B. Municipal Liability of Defendant City of Nashville Under 42 U.S.C. § 1983

The Court now turns to whether Defendant City of Nashville is subject to § 1983 liability in the present case. In *Monell v. Department of Social Services*, the Supreme Court established that a municipality is subject to liability under 42 U.S.C. § 1983 only when the violation of a plaintiff's constitutional right can be attributed to the enforcement or application of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). "Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id*. The Supreme Court explained that "[a]lthough

---

[3] The Court will not address Defendants' arguments regarding qualified immunity, as qualified immunity is not applicable unless a defendant is sued in a personal capacity. *Johnson*, 172 F.3d at 535. Likewise, the Court will not address Defendants' arguments regarding lack of a causal link between the alleged violation and various defendants in light of the conclusion that the present suit is actually against the City of Nashville and not any named Defendant in an individual capacity.

not authorized by written law, such practices of [officials] could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). Further, the Court has made clear that municipal liability may also result when a plaintiff's constitutional rights have been violated as the result of a decision made by a person with "final policymaking authority" for the municipality. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-124 (1988). In *Praprotnik*, the Supreme Court explained the analysis to be used in determining whether a certain official has "final policymaking authority":

> We begin by reiterating that the identification of policymaking officials is a question of state law. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." Thus the identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense. The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms. Among the many kinds of municipal corporations, political subdivisions, and special districts of all sorts, one may expect to find a rich variety of ways in which the power of government is distributed among a host of different officials and official bodies. Without attempting to canvass the numberless factual scenarios that may come to light in litigation, we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.

*Id.* at 124-125 (internal citations omitted).

Thus, the Court makes clear that the analysis of whether an individual has "final policymaking authority" is dependent on state law and, as shown by the *Praprotnik* Court, complicated. In sum, in order to establish municipal liability and prevail, Plaintiffs must show that (1) their constitutional or federally protected rights have been violated due to (2) a municipal ordinance, custom, or decision made by a municipal official with "final policymaking authority."

In the present case, Defendants argue that when Jerry Harwell made the decision to raze Plaintiffs' building he was acting pursuant to the Fire Code adopted by the State of Arkansas. ECF No. 16, pp. 4-5. Defendants likewise state that "[t]he City of Nashville adheres to and follows the Fire Code," but do not make clear whether the City of Nashville has adopted that code as a city ordinance or regulation or is simply required to adhere to the Fire Code under state law. ECF No. 16, p. 5. Finally, Defendants conclude that "[t]his is a single incident and there is no policy of the City other than the overriding concern for public safety." ECF No. 16, p. 8. Thus, it appears that Defendants are arguing that: (1) there is no policy, ordinance, or custom of the City of Nashville which warrants municipal liability; (2) Jerry Harwell is not a person with "final policymaking authority"; and (3) Harwell acted pursuant to a state law and therefore the City of Nashville is not the proper defendant.[4]

In the brief in support of their response (ECF No. 19), Plaintiffs assert that Jerry Harwell made his decision to raze Plaintiffs' building pursuant to authority given to him by the Fire Code as adopted by the State of Arkansas. ECF No. 19, pp. 10-11, 15. Plaintiffs argue that Jerry Harwell is, under the Fire Code, the official with "final policymaking authority," and that, therefore, his decision to demolish Plaintiffs' building constitutes "the *de facto* official policy of the City of Nashville." ECF No. 19, p. 15. Plaintiffs also make a "void for vagueness" argument in regard to the Fire Code, as it is allegedly silent on certain key issues. ECF No. 19, p. 11. Thus, Plaintiffs base their right to relief on the propositions that: (1) the Fire Code constitutes an unconstitutional official policy of the City of Nashville; and (2) Jerry Harwell has "final

---

[4] Defendants do not make this third argument explicitly, but in making it clear that Harwell was acting pursuant to the Fire Code, as adopted and promulgated by the State of Arkansas, Defendants, purposefully or otherwise, implicitly argue that the State of Arkansas would be the appropriate defendant. However, such suit would be limited by well-established rules governing claims against states under 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (In which the Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

policymaking authority" and, therefore, his decision warrants a finding of municipal liability under 42 U.S.C. § 1983.

As to the first proposition, Plaintiffs have failed to allege any facts establishing that the Fire Code has been adopted or otherwise promulgated by the City of Nashville.[5] Both parties agree that the Fire Code was adopted by the State of Arkansas, and it is unclear from the documents filed and provisions quoted whether municipalities are required to follow the Fire Code or may, alternatively, establish their own code. Further, it may be that the Fire Code establishes minimum standards that all municipalities must adhere to, in which case it could be that Jerry Harwell was acting pursuant to state law and not local ordinance or custom.[6] Therefore, because neither party has fully and adequately briefed or argued this issue, the Court cannot determine if Jerry Harwell acted pursuant to an official policy or custom of the City of Nashville. Thus, as to this issue, there is a genuine issue of material fact and summary judgment is not appropriate.

As to the issue of whether Jerry Harwell has "final policymaking authority," the Court is unable to grant summary judgment at this time because the parties have not provided enough information. As noted above, "identification of policymaking officials is a question of state law." *Praprotnik*, 485 U.S. at 124-126. Neither party has cited any state statute, constitutional provision, regulation, or other authority to show that Jerry Harwell does or does not have "final

---

[5] The Complaint (ECF No. 1) is unclear in regard to whether Plaintiffs believe Jerry Harwell was acting under state or municipal authority. For example, the Complaint states: "All Defendants were, at the time of the occurrences described herein, acting under color of authority of Arkansas Law." ECF No. 1, ¶ 9. However, the Complaint later says: "The conditions complained of herein invoke customs, policies or procedures of the City Government of Nashville, Arkansas[.]" ECF No. 1, ¶ 12. Although these statements are not necessarily at odds, the Court is unsure of Plaintiffs' position.

[6] It is important to note that it is unsettled whether and when a municipality may incur liability under 42 U.S.C. § 1983 for the enforcement of or adherence to state law. The Eighth Circuit has not addressed this issue directly, but has noted the "extensive debate in the circuits." *Slaven v. Engstrom*, 710 F.3d 772, 781 n.4 (8th Cir. 2013) (citing *Vives v. City of New York*, 524 F.3d 346, 351-53 (2d Cir. 2008) (in which the court examined the various positions taken by different circuits)).

policymaking authority." Further, the issue is complicated by the fact that both sides agree that Jerry Harwell acted pursuant to the Fire Code as adopted by the State of Arkansas. This brings up the possibility that, when acting pursuant to the Fire Code, Jerry Harwell may be a state policymaker, but not a municipal policymaker. *See McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997) (in which the Court had to decide whether a county sheriff was a policymaker for the state or the county when acting in his law enforcement capacity). Thus, the Court must determine whether Jerry Harwell represents the State of Arkansas or the City of Nashville when acting under authority granted by the Fire Code. At this point, neither party has examined or argued this issue and, therefore, summary judgment is not appropriate at this time.

Taking the reasoning above into account, the Court finds that summary judgment should not be granted because the record is not sufficiently developed as to these issues.

### C. Adequacy of State Remedies

In their final argument, Defendants take the position that summary judgment is appropriate because "there are adequate state remedies" Plaintiffs can pursue for the alleged procedural due process and takings violations.[7] ECF No. 16, p. 18.

In general, to state a claim under 42 U.S.C. § 1983, a litigant asserting a deprivation of procedural due process must exhaust state remedies. *Wax'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000). However, there is an exception to the general rule. Where an "established state procedure"—rather than a "random and unauthorized act by a state employee"—is responsible for the destruction of one's property, a post-deprivation hearing may be constitutionally inadequate, unless: (1) the state has a necessity for quick action; or (2)

---

[7] The Court will not discuss Plaintiffs' substantive due process or Fourth Amendment claims because Defendants have not addressed those issues.

providing pre-deprivation process is impractical. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982); *see also Keating v. Neb. Pub. Power Dist.*, 562 F.3d 923, 929 (8th Cir. 2009) (recognizing that it is not necessary for a litigant to have exhausted available post-deprivation remedies when the litigant contends that he was entitled to pre-deprivation process); *Westborough Mall, Inc. v. City of Cape Girardeau,* 794 F.2d 330, 337 (8th Cir. 1986) (concluding that "[t]he availability of post-deprivation remedies is not a defense to the denial of procedural due process where pre-deprivation process is practicable" and district court erred in instructing jury otherwise). "In situations where the State feasibly can provide a pre-deprivation hearing before taking property, it generally must do so regardless of the adequacy of a post-deprivation tort remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

In the case at bar, Defendants and Plaintiffs agree that Jerry Harwell acted pursuant to the Fire Code adopted by the State of Arkansas. Thus, it appears both parties believe that Mr. Harwell was acting under authority of an "established state procedure" when he ordered that Plaintiffs' building be razed. Both parties have argued their position relative to the emergency conditions which gave rise to Mr. Harwell's decision and the impracticality of providing pre-deprivation process. However, there is a basic disagreement, supported by evidence on both sides, over whether there were exigent circumstances sufficient to render pre-deprivation process impractical. Thus, it is evident that a material issue of fact remains as to this issue and summary judgment should be denied.[8]

---

[8] Defendants also direct the Court to *Collier v. City of Springdale* in support of their argument that Plaintiffs have adequate state remedies. 733 F.2d 1311 (8th Cir. 1984). However, *Collier* is distinguishable from the present case. In *Collier*, the defendants conceded that there was a "lawful taking" and that the plaintiff was owed just compensation but argued that state eminent domain laws provided adequate compensation and, therefore, the plaintiff was not entitled to relief pursuant to 42 U.S.C. § 1983. The court examined whether an adequate state remedy existed in regard to the exercise of eminent domain and concluded that Arkansas law provides a means of

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants have failed to show they are entitled to summary judgment. Thus, Defendants' Motion for Summary Judgment (ECF No. 15) is **DENIED**.

**IT IS SO ORDERED**, on this 23rd day of November, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

just compensation when an entity exercises its eminent domain power. Defendants do not argue Mr. Harwell acted under eminent domain power, but instead under authority of the Fire Code and that Plaintiffs can be adequately compensated by state tort remedies. Defendants claim *Collier* supports their assertion that state tort remedies are sufficient; however, the *Collier* court made a conscious decision not to take up the issue of adequacy of state tort remedies. *See Collier* at 1317.