IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CARL JOHNSON and
JUSTIN JOHNSON                                                                                          PLAINTIFFS

V.                                         CASE NO. 4:15-CV-04033

CITY OF NASHVILLE, A
MUNICIPAL CORPORATION, *et al*.                                                          DEFENDANTS

## ORDER

Before the Court are the court-ordered briefs submitted by the parties regarding the issue of whether Jerry Harwell had final policymaking authority for the City of Nashville. ECF Nos. 36, 37. The Court finds this matter ripe for consideration.

## I. BACKGROUND

As the Court noted in a previous order, Plaintiffs appear to premise their contention that the City of Nashville is liable for the alleged violation of their constitutional rights solely on the theory that Jerry Harwell's decision to demolish their building constituted official municipal policy. It is well established that where a claim is based on a final policymaker theory "[t]he district court must identify the final policymaker as a matter of law before the claims reach the jury." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017). Accordingly, due to the fact that the parties had not adequately briefed this issue, the Court directed the parties to "thoroughly brief the issue of whether Jerry Harwell qualifies as a 'final policymaker' for the City of Nashville and whether his decision to raze Plaintiffs' building constituted the official policy of the City of Nashville for purposes of § 1983 municipal liability." ECF No. 33.

## II. DISCUSSION

In *Monell v. Department of Social Services*, the Supreme Court established that a municipality is subject to liability under 42 U.S.C. § 1983 only when the violation of a plaintiff's constitutional right can be attributed to the enforcement or application of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). In contrast, states and state officials acting in their official capacities are not "persons" for purposes of 42 U.S.C. § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (in which the Court stated "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). The *Monell* Court further stated that:

> although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels.

*Monell,* 436 U.S. at 690. Furthermore, courts have found that "a single decision by a municipal official can constitute official policy." *Soltesz*, 847 F.3d at 946 (citing *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016)). However, "liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)); *see also*, *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785-86 (1997) ("[T]he question is not whether [the local official] acts for [the state] or [the political subdivision] in some categorical 'all or nothing' manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."); *Dean v. Cnty. of Gage*, 807 F.3d 931, 940 (8th Cir. 2015) (quoting *McMillian*, 520 U.S. at 784, "[A] local government is liable under § 1983 for its

policies that cause constitutional torts. These policies may be set by the government's lawmakers, or by those whose edicts or acts may fairly be said to represent official policy."), *cert. denied sub nom. Gage Cnty., Neb. v. Dean*, 136 S. Ct. 2490 (2016). "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives[.]" *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985).

In *City of St. Louis v. Praprotnik*, the Supreme Court explained the analysis to be used in determining whether a certain official has "final policymaking authority":

> We begin by reiterating that the identification of policymaking officials is a question of state law. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." Thus the identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense. The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms. Among the many kinds of municipal corporations, political subdivisions, and special districts of all sorts, one may expect to find a rich variety of ways in which the power of government is distributed among a host of different officials and official bodies. Without attempting to canvass the numberless factual scenarios that may come to light in litigation, we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.

485 U.S. 112, 124-125 (1988) (internal citations omitted). In making this determination, district courts should consult two sources: "(1) 'state and local positive law' and (2) state and local 'custom or usage having the force of law.'" *Soltesz*, 847 F.3d at 946 (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1215 (8th Cir. 2013)). However, the *Praprotnik* Court stated that it was "not, of course, predicting that state law will always speak with perfect clarity." 485 U.S. at 125.

Again, upon examination of the entire record, it seems that Plaintiffs base their claim that the City of Nashville is liable for alleged constitutional violations on the contention that Harwell was a "final policymaker" for the City of Nashville, arguing at one point that his decision to demolish Plaintiffs' building constituted "the *de facto* official policy of the City of Nashville."[1] ECF No. 19, p. 15. Further, it appears to be undisputed that Harwell based his decision to demolish Plaintiffs' building and claimed authority to do so under the Arkansas Fire Prevention Code, 2007 Edition ("AFPC"), a state regulatory code that was in effect at the time of the events in question. ECF No. 36, p. 4 (Defendants' brief stating that "Mr. Harwell's decision to abate this property . . . was a decision based upon authority given to him by the State of Arkansas' Fire Code, not by the City of Nashville, Arkansas."); ECF No. 37, p. 6 (Plaintiffs' brief stating that "[i]n sum, Chief Harwell was the final decision making authority at the fire scene . . . pursuant to Volume I of the Arkansas Fire Prevention Code."). Therefore, the Court must potentially make two determinations: (1) whether Harwell had final policymaking authority and, if so, (2) whether he was a final policymaker for the City of Nashville or the State of Arkansas.

---

[1] Initially Plaintiffs claimed that "[t]he conditions complained of herein invoke customs, policies or procedures of the City Government of Nashville[,] Arkansas", ECF No. 1, ¶ 12, but did not state that their theory of the case rested on the contention that Harwell had final policymaking authority. Likewise, Plaintiffs subsequently stated that Harwell made his decision to demolish Plaintiffs' building pursuant to "a standing policy or custom established by Defendant City of Nashville." ECF No. 1, ¶ 19. However, Plaintiffs subsequently alleged that "[b]y authorizing the removal of Plaintiffs' property after the impending peril had passed, Defendant City of Nashville was deliberately indifferent and perpeturated [sic] a policy likely to injury [sic] citizens." ECF No. 1, ¶ 31. This contention would suggest that Plaintiffs believe they are entitled to relief based on the theory that Harwell was a final policymaker for the City of Nashville as it was Harwell that authorized the removal of Plaintiffs' property. Furthermore, Plaintiffs subsequently stated that Harwell's decision to demolish Plaintiffs' building constituted "the *de facto* official policy of the City of Nashville," that "Harwell's decision was the official policy of Defendant [C]ity of Nashville," and that "Harwell was the decision maker with final authority to establish municipal policy[.]" ECF No. 19, p. 15. Based on these assertions, the Court has concluded that although Plaintiffs initially mentioned "customs" and "standing policies" of the City of Nashville, Plaintiffs' actual contention and theory of the case is that Harwell had final policymaking authority for the City of Nashville and that, therefore, his decision to raze Plaintiffs' building constituted municipal policy. The Court has previously stated this conclusion and Plaintiffs have never advised the Court otherwise.

### A. Policymaking Authority of Jerry Harwell

The parties have provided the Court with various sections of the 2007 Edition of the AFPC in support of their arguments. The introductory pages of the 2007 Edition note that the AFPC was "developed to assist in preventing and controlling fires in and outside of structures in the State of Arkansas." ECF No. 37-1. Furthermore, in the introductory note, Colonel Winford E. Phillips, Director of the Arkansas State Police and Arkansas State Fire Marshal, states that he "encourage[s] Arkansas cities and counties to join with the Arkansas State Fire Marshal's Office in an effort to enforce the AFPC by adopting the [AFPC] as a local ordinance." ECF No. 37-1. Colonel Phillips went on to state that "[p]ursuant to the authority vested in the Director of the Department of Arkansas State Police by Section 6 of Act 254 of 1955 (A.C.A. §[] 12-13-105), as amended, I promulgate these rules for the prevention of fire hazards in the State of Arkansas."[2] ECF No. 37-1. Further, in the Foreword to the AFPC Lieutenant Lindsey Williams of the State Fire Marshal's Office of the Department of Arkansas State Police states that "[t]he [AFPC] establishes MINIMUM rules dealing with fire and building safety." ECF No. 37-1 (emphasis in original).

Of great importance to the present controversy is § 101.2.2 of the AFPC. That section states that:

> Each district, county, municipality or other political subdivision of this state shall only adopt and enforce the provisions of the Arkansas Fire Prevention Code, 2007 Edition. The AFPC 2007 Edition shall be the only foundation document available for modification by local jurisdictions should they choose to adopt more stringent provisions. It shall be the responsibility of local authorities having jurisdiction to

---

[2] At the time of this statement, Ark. Code Ann. § 12-13-105 read as follows: "The State Fire Marshal Enforcement Section shall have the responsibility to: (1) [p]rovide sufficient training to the several deputy fire marshals in the State of Arkansas to enable them to better understand their duties and their authority and to motivate them to perform their duties in an effective and efficient manner; (2) [c]oordinate fire prevention efforts with other agencies and groups; (3) [d]evelop and present public awareness programs in fire prevention and protection; (4) [d]evelop and disseminate fire prevention information and material; (5) [e]nforce the fire prevention code and periodically revise and update such code; (6) [i]nvestigate fires of a suspicious nature in the state; and (7) [d]o and perform such other functions as will promote an efficient and effective fire prevention and control program in the state."

bring the proposed specific rule or provision up to the minimum standards of the AFPC 2007 Edition.

ECF No. 37-2, AFPC § 101.2.2. When read in conjunction with Colonel Phillips' introductory note "encouraging" cities and counties to adopt the AFPC and Lieutenant Williams' statement that the AFPC establishes "minimum" rules, it is evident that the AFPC applies across the state of Arkansas and that although cities and counties may adopt the AFPC, they are not required to do so.[3] Plaintiffs contend that § 101.2.2 requires local jurisdictions to adopt the AFPC. ECF No. 37, p. 2. However, although various notes and provisions of the AFPC establish that local jurisdictions must *follow* the AFPC, the language of § 101.2.2 does not necessarily require local authorities to *adopt* the AFPC. Regardless, shortly after making this claim Plaintiffs state that "[t]here is no evidence that the City of Nashville adopted the AFPC as a local ordinance[.]" ECF No. 37, p. 2. Further, § 101.2.2 establishes that cities and counties, if they so desire, are able to adopt more stringent provisions. However, Plaintiffs state that "[t]here is no evidence that the City of Nashville . . . through local ordinances modified [the] AFPC." ECF No. 37, pp. 2-3. Thus, it seems undisputed that Harwell was acting under the authority of the AFPC as promulgated by the State of Arkansas, as the City of Nashville had not formally adopted the AFPC or any more stringent code.

---

[3] This understanding is confirmed by an opinion issued by the Arkansas Office of the Attorney General in 2005. *See* Ark. Op. Att'y Gen. No. 2005-075 (July 19, 2005). In that opinion, the Arkansas Office of the Attorney General makes the following statement:
> In my opinion, the Arkansas Fire Prevention Code ("AFPC") has the force of state law and is enforceable regardless of whether a local government has adopted it by ordinance. Additionally, the State Fire Marshal, the Arkansas State Police, and enumerated local officials have state-mandated authority to enforce the AFPC. As a matter of state law, any failure to obey an order or instruction of an authorized fire official enforcing the AFPC is a Class A misdemeanor punishable by up to one year imprisonment as well as a fine not to exceed $1,000.00. The AFPC is enforceable by the State Fire Marshal through the Arkansas State Police or by a local official who is an *ex officio* deputy to the fire marshal under the Fire Prevention Act, A.C.A. §§ 12-13-101 through - 116 (Repl. 2003).

Ark. Op. Att'y Gen. No. 2005-075. Although this opinion speaks regarding the 2002 Edition of the AFPC—which was superseded by the 2007 Edition of the AFPC—Plaintiffs cite it as authority. ECF No. 37-2.

Another relevant provision of the AFPC describes something known as the "department of fire prevention." ECF No. 37-3, AFPC § 103.1. Section 103.1 states that "[t]he department of fire prevention is established within the jurisdiction under the direction of the fire code official" and that the "function of the department shall be the implementation, administration and enforcement of the provisions of this code." ECF No. 37-3, AFPC § 103.1. The AFPC defines "fire code official" as "[t]he fire chief or other designated authority charged with the administration and enforcement of the code, or a duly authorized representative." ECF No. 37-4, p. 3, AFPC § 202. Likewise, the AFPC defines "fire chief" as "[t]he chief officer of the fire department serving the jurisdiction, or a duly authorized representative." ECF No. 37-4, p. 3, AFPC § 202. Furthermore, the AFPC provides that:

> The fire code official shall be appointed by the chief appointing authority of the jurisdiction; and the fire code official shall not be removed from office except for cause and after full opportunity to be heard on specific and relevant charges by and before the appointing authority.

ECF No. 37-3, AFPC § 103.2. In the present case, the parties have not argued or offered evidence as to whether Harwell was "appointed by the chief appointing authority of the jurisdiction," but they agree that Harwell was the chief of the Nashville Fire Department. Thus, as chief of the Nashville Fire Department, it appears that Harwell falls under the definition of fire code official as defined in the AFPC.

Along with delegating "primary responsibility for the safety of places in his/her own district, city or county" to the fire code official, ECF No. 37-3, AFPC § 104.3.2(B), the AFPC gives the fire code official and local fire chiefs broad powers. For example, one section of the AFPC provides that:

> The fire code official is hereby authorized to enforce the provisions of this code and shall have authority to render interpretations of this code, and to adopt policies, procedures, rules, and regulations in order to clarify the application of its

provisions. Such interpretations, policies, procedures, rules and regulations shall be in compliance with the intent and purpose of this code and shall have the effect of waiving requirements specifically provided for in this code.

ECF No. 37-3, AFPC § 104.1. Likewise, § 109.3.1 states that: "[i]n addition to the imposition of the penalties herein described, the fire code official is authorized to institute appropriate action to prevent unlawful construction or to restrain, correct or abate a violation[.]" ECF No. 37-5, AFPC § 109.3.1. Similarly, the AFPC provides that "[w]here conditions exist that are deemed hazardous to life and property, the fire code official or fire department official in charge of the incident is authorized to abate summarily such hazardous conditions that are in violation of this code." ECF No. 37-5, AFPC § 110.3. Section 104.11 further states that:

> The fire chief or officer of the fire department in charge at the scene of a fire or other emergency involving the protection of life or property or any part thereof, shall have the authority to direct such operation as necessary to extinguish or control any fire, perform any rescue operation, investigate the existence of suspected or reported fires, gas leaks or other hazardous conditions or situations, or take any other action necessary in the reasonable performance of duty.[4]

ECF No. 37-3, AFPC § 104.11. All of these provisions illustrate the broad powers bestowed upon local fire officials, such as Harwell, under the AFPC.

As to the issue at hand, the AFPC explicitly states that, as the local fire code official, Harwell had the power to render interpretations of the provisions of the AFPC "and to adopt policies, procedures, rules, and regulations in order to clarify the application of its provisions." ECF No. 37-3, AFPC § 104.1. Likewise, in his capacity as fire code official and "fire department official in charge of the incident," Harwell was given the power to "abate summarily such hazardous conditions that are in violation of this code," ECF No. 37-5, AFPC § 110.3, a very broad and significant power. Furthermore, the provisions of the AFPC offered by the parties do

---

[4] Although some provisions of the AFPC refer to both the fire code official and fire chief, the Court will not make a distinction in the present analysis because it appears that Harwell was acting as both the fire code official and the fire chief. Likewise, the parties do not make such a distinction.

8

not state whether Harwell's decisions were subject to review and the nature of "summary abatement" suggests that his decision was final. Accordingly, with this reasoning in mind, it appears that Harwell was an individual with final policymaking authority under the AFPC.

**B. Whether Jerry Harwell was a Final Policymaker for the City of Nashville or the State of Arkansas**

Having determined that Harwell had final policymaking authority, the Court must now decide whether Harwell, when exercising his policymaking authority under the AFPC, was a policymaker for the City of Nashville or the State of Arkansas. As an initial matter, the Court notes that Plaintiffs' brief on the issue of municipal liability does not fully address whether Harwell was a policymaker for the State of Arkansas or the City of Nashville. In their brief, Plaintiffs focus on the general question of whether Harwell had policymaking authority—and conclude that he did under the AFPC—but fail to argue whether that authority gave him state or municipal policymaking authority.

Moving on to the issue at hand, although the parties have not cited any authority outside of the AFPC and one attorney general opinion, the Court has undertaken an examination of both the Arkansas Code ("Code") and the Arkansas Constitution to better understand Harwell's role, responsibilities, and the source of his authority. Although the Arkansas Constitution provides little guidance, the Code is very informative. Upon review of the relevant statutes and regulations, it appears that under the Code as it appeared in 2010, the Arkansas Legislature ("Legislature") vested policymaking authority in the area of fire prevention and safety in both the Director of the Arkansas State Police and local city councils.

In 2010, the year Plaintiffs' building was demolished, the Legislature had codified certain laws surrounding fire safety and prevention in the Fire Prevention Act ("FPA"), Ark. Code Ann. §§ 12-13-101 through 12-13-116. Under the FPA, the "administration and enforcement" of the

9

FPA was vested in the Department of Arkansas State Police.[5] ARK. CODE ANN. § 12-13-104(a) (West 2010). Further, the FPA stated that:

> The Director of the Department of Arkansas State Police is empowered to create and maintain a State Fire Marshal Enforcement Section in the Department of Arkansas State Police and to appoint such personnel with such duties, powers, and titles as he or she may deem necessary for the proper administration and enforcement of [the FPA].

ARK. CODE ANN. § 12-13-104(b) (West 2010). Likewise, the FPA stated that the "State Fire Marshal Enforcement Section shall have the responsibility to . . . [d]evelop and disseminate fire prevention information and material . . . and [e]nforce the fire prevention code and periodically revise and update such code[.]" ARK. CODE ANN. § 12-13-105(4)&(5) (West 2010). Similarly, the FPA gave the Director of the Department of Arkansas State Police the power to "adopt reasonable rules and regulations for the effective administration of this subchapter to accomplish its intent and purposes, and to safeguard the public from fire hazards." ARK. CODE ANN. § 12-13-107(b) (West 2010). These provisions clearly establish that the Legislature gave final policymaking authority to the Director of the Arkansas State Police.

Nevertheless, as noted above, the Legislature also gave some final policymaking authority in the area of fire prevention and safety to municipalities. However, that authority is not found in the FPA, but under the statutes governing the organization and administration of

---

[5] Interestingly the Director of the Arkansas State Police gave local governments the option of taking on some of the final policymaking authority vested in that office. Along with the above quoted AFPC provisions noting that the fire code official shall be locally appointed and that cities and counties can adopt a more stringent fire code, the AFPC also allows for the establishment of a local appeal board:
> Any county or municipality or other political subdivision may establish a local board of adjustments and appeals to review orders given by the local fire official. The board shall consist of 5 members appointed by the applicable governing body.

ECF No. 37-5, AFPC § 108.1. However, as the language makes clear, the establishment of such review boards is discretionary. The Court will not reach the issue of whether a municipality's exercise of that delegated power would give rise to municipal liability as there is no suggestion or evidence to indicate that the City of Nashville utilized any power delegated from the Director of the Arkansas State Police.

municipalities. For example, the Code gave general authority to specific local offices and officials:

> The corporate authority of cities that are organized shall be vested in one (1) principal officer, to be called the mayor, and one (1) board of aldermen, to be called the city council, together with such other officers as are mentioned[6] in this subtitle or may be created under its authority.

ARK. CODE ANN. § 14-42-102 (West 2010). Likewise, the Code gave the city council specific powers regarding local fire prevention and safety:

> The city council shall establish fire departments and provide them with proper engines and such other equipment as shall be necessary to extinguish fires and preserve the property of the city and of the inhabitants from conflagration. The council shall promulgate such rules and regulations to govern the department as it shall deem expedient.

ARK. CODE ANN. § 14-53-101(a)&(b) (West 2010). It seems likely that power to adopt "rules and regulations" would constitute final policymaking authority.

The Code in effect in 2010 also gave city officials the power to employ a "municipal fire marshal." Section 14-53-112 stated, in relevant part, that:

> For purposes of this section, "municipal fire marshal" means a person who holds a full-time office or position of fire marshal *created by ordinance* in a city of the first class,[7] and who . . . [i]s responsible for the detection and prevention of arson, the enforcement of laws relating to arson and other burning, and enforcement of

---

[6] Although the Code in effect in 2010 did "mention" the roles of fire chiefs and local fire marshals, those positions are not empowered by the Legislature with the broad authority given to city councils. This is not meant to suggest that the Legislature did not give any final policymaking authority for municipalities directly to local fire officials, as the Code in effect in 2010 did give local fire chiefs certain duties; some mandatory and some discretionary. For instance § 14-53-105 gave the fire chief the duty to "arrange the working hours of the employees of the department so that each employee shall work, as nearly as practical, an equal number of hours per month, not to exceed seventy-two (72) hours per week," ARK. CODE ANN. § 14-53-105(a)(2)(A) (West 2010), and to ensure that fire department employees got fifteen days of vacation with full pay, ARK. CODE ANN. § 14-53-107 (West 2010). Similarly, the Code also gave the local fire chief discretion to "require in case of an epidemic, conflagration, or other emergency the employees for a greater period than provided in this section to continue on duty during the epidemic, conflagration, or other emergency." ARK. CODE ANN. § 14-53-105(a)(2)(B) (West 2010). However, as the Nashville Fire Department is a volunteer department, the Court is unsure whether these provisions are applicable. Furthermore, the Court, while noting the potential that these provisions gave final policymaking authority to local fire officials in some limited areas, is not in a position to decide whether they in fact did give such authority.

[7] The City if Nashville is a "city of the first class" under Ark. Code Ann. §§ 14-37-103(a)(1) and 14-37-104(a), as it had a population of 4,627 at the 2010 census, *see* UNITED STATES CENSUS BUREAU—AMERICAN FACT FINDER, https://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml (last visited June 22, 2017).

the city and state[8] fire prevention codes[.] . . . A municipal fire marshal is hereby authorized and empowered to carry a weapon and to make arrests for violations of the laws relating to arson and other unlawful burning.

ARK. CODE ANN. § 14-53-112(a)(1)&(b) (West 2010) (emphasis added). Theoretically, if a municipality chose to create such a position, the municipality could likewise delegate policymaking authority to the person holding that position.

In the case at bar, with the above cited provisions in mind, it seems evident that in the present situation Harwell acted under the authority of the Director of the Department of Arkansas State Police and as a final policymaker for the State of Arkansas. First, it is undisputed that Harwell operated under the authority given to him by the AFPC, a regulatory code promulgated by the Director of the Arkansas State Police. Further, although the Code allows for local authorities to draft "rules and regulations" regarding local fire departments and to employ a municipal fire marshal, the parties have not provided the Court with any relevant ordinance adopting such rules or creating Harwell's position. Or, put another way, Plaintiffs have not provided the Court with any relevant local law that suggests that the Nashville City Council exercised its final policymaking authority, let alone delegated that authority to Harwell. Likewise, although the AFPC allows for some local authority in the form of more stringent fire codes or the establishment of a local appeal board, Plaintiffs explicitly state that there is no evidence that the City of Nashville adopted a more stringent code and do not allege that the City established an appeal board. Accordingly, it is clear that Harwell acted with final policymaking authority for the State of Arkansas.[9]

---

[8] It is important to note that it is unsettled whether and when a municipality may incur liability under 42 U.S.C. § 1983 for the enforcement of or adherence to state law. The Eighth Circuit has not decided this issue but has noted the "extensive debate in the circuits." *Slaven v. Engstrom*, 710 F.3d 772, 781 n.4 (8th Cir. 2013) (citing *Vives v. City of New York*, 524 F.3d 346, 351-53 (2d Cir. 2008) (in which the court examined the various positions taken by different circuits)).

[9] This conclusion is supported by the Code itself. The FPA in effect in 2010 stated that:

## III. CONCLUSION

Based on the authorities cited by the parties as well as an examination of relevant provisions of the Arkansas Code, the Court has concluded as a matter of law that Jerry Harwell acted with final policymaking authority for the State of Arkansas in the instant case. Accordingly, as Plaintiffs seek relief solely under a theory that Harwell was a municipal policymaker, the Court finds that Defendants may be entitled to summary judgment. Therefore, Defendants are **DIRECTED** to file a motion for summary judgment. Defendants shall file their motion within fourteen (14) days of the date of this Order. Plaintiffs shall have fourteen (14) days from the date Defendants file their motion in which to file a response.

**IT IS SO ORDERED**, on this 27th day of June, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

All mayors, members of fire departments, and peace officers shall be *ex officio* deputies to the Director of the Department of Arkansas State Police . . . [and] [t]hey shall be subject to the duties and obligations imposed by this subchapter in fire prevention and in the investigation of the cause, origin, and circumstances of fires within their jurisdiction.

ARK. CODE ANN. § 12-13-108 (West 2010). Thus, it seems that the Legislature recognized that by virtue of their positions, some local officials also have certain state responsibilities and fall under the supervision of state officers.